UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ERNEST GLYNN RODEN, ET AL** | **CIVIL ACTION NO. 14-2767** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **SYNERGY TECHNOLOGIES INC., ET AL** | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM OPINION

Pending before the Court is the Appeal of Ernest and Helen Roden ("the Rodens") from the Bankruptcy Court's August 21, 2014 order converting the Roden's Chapter 13 bankruptcy to a Chapter 7 liquidation. [Doc. No. 3, Exh. 17].[1]

For the following reasons, the Bankruptcy Court's order is AFFIRMED in its entirety, and the Appellants' Appeal is DISMISSED.

**I.    FACTS AND PROCEDURAL BACKGROUND**

In 2002, Ernest Roden ("Roden") was granted a patent on safe-acid technology for use primarily in food processing. Roden and others then formed SteriFx, Inc. ("SteriFx"), later succeeded by Synergy Technologies, Inc., ("Synergy"), for the purpose of exploiting the safe-acid technology. Through a series of corporate transactions, Roden assigned the patent to Synergy in 2012.

On April 25, 2011, the Rodens filed for a Chapter 13 bankruptcy. On June 14, 2011, the Rodens attended a 341 meeting of creditors, in which they stated that they did not have any legal claims outstanding and did not intend to file suit against anyone. [Doc. No. 3, Exh. 1, p. 13 of 53]. On July 11, 2013, after four amended plans, and reliance on the Roden's statements that they did not have any outstanding legal claims, the Chapter 13 trustee dismissed the case without discharge for

---

[1] *See In re Roden,* (Bankr. W.D. La.)*(*No. 11-30696).

failure to make plan payments. Approximately five months later, on December 20, 2013, Roden filed suit against Synergy and SteriFx for patent infringement, theft, and fraud in the Eastern District of Louisiana (hereafter referred to as "the patent litigation"). *See Roden v. Synergy Technologies, Inc.*, CIV.A. No. 13-6753, 2014 WL 2533718, at *2 (E.D. La. June 4, 2014).

On March 14, 2014, Synergy and SteriFx filed a motion for summary judgment in the patent litigation, asserting judicial estoppel on grounds that Roden had previously represented that he had no known legal claims. *Id.* at *1. Roden argued that he only learned of his patent infringement claim after his bankruptcy case was dismissed and, thus, that his current claims were not plainly inconsistent with his previous position and that any misrepresentation to the bankruptcy court was inadvertent. *Id.* Roden also contended that, because his bankruptcy was dismissed without discharge, the bankruptcy court never accepted any representation that he had no patent rights. *Id.* at *2.

On June 4, 2014, the district court denied Synergy and SteriFx's motion for summary judgment, reasoning that there were material facts at issue because the bankruptcy court "may have revoked any acceptance when it dismissed the plaintiff's bankruptcy without a discharge," returning the parties to their pre-discharge "status quo ante." *Id.* (internal citations and quotations omitted).

On September 16, 2014, Synergy and SteriFx (hereafter collectively referred to as "the Appellees") intervened as an interested party in Roden's bankruptcy case and moved the Bankruptcy Court, under Federal Rule of Civil Procedure 60(b), to vacate its July 11, 2013 order of dismissal and to convert Roden's Chapter 13 bankruptcy to a Chapter 7 liquidation. [Doc. No. 3, Exh. 9, pp.14-15]. On September 16, 2014, the Bankruptcy Court conducted an evidentiary hearing and found that Roden had committed fraud and acted in bad faith for failure to disclose his patent claim. [Doc. No. 3, Exh. 17]. Accordingly, the Bankruptcy Court granted the motion. *Id.*

Sam Henry, Roden's Chapter 13 attorney, failed to appear at that hearing. *Id.* at 2. The Bankruptcy Court allowed Bradley Drell to substitute as Roden's Chapter 13 attorney.[2] Roden attempted to present three letters from attorneys whom he had consulted regarding his patent law claim, but who had declined to take Roden's case because, *inter alia,* they believed Roden's patent claim had prescribed. [Doc. No. 3, Exh. 20, pp. 25-26]. Appellees objected to the letters on hearsay grounds. Mr. Drell argued the letters were admissible under the present sense impression exception to the hearsay rule. The Bankruptcy Court upheld Appellees' objection and refused to allow the letters into evidence. *Id.* at 26.

Roden has timely filed an appeal of the Bankruptcy Court's order to this Court. [Doc. No. 10]. Roden petitions this Court to overrule the Bankruptcy Court's ruling and, alternatively, to permit him to reinstate his case as a Chapter 13 bankruptcy. [Doc. No. 10, p. 16].

Appellees filed an Opposition Brief [Doc. No. 15]. Roden filed a reply. [Doc. No. 16]. Eugene Hastings, the Chapter 13 trustee, also filed an Opposition Brief [Doc. No. 17], to which Roden did not reply.

## II. LEGAL STANDARD

This Court has jurisdiction over Roden's appeal from the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(a). In this regard, a district court functions as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law *de novo*. *In re Eldercare Properties, Ltd.*, 568 F.3d 506, 515 (5th Cir. 2009). A court "by definition abuses its discretion when it makes an error of law." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (citations omitted); *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) ("An abuse

---

[2] Mr. Drell was at the hearing acting as counsel for Roden's Chapter 11 proceeding.

of discretion occurs where the bankruptcy court '(1) applies an improper legal standard or follows improper procedures . . ., or (2) rests its decision on findings of fact that are clearly erroneous.'") (citation omitted).

**III.**     **LAW AND ANALYSIS**

In his appellate brief, Roden raises the following issues: (1) whether the Bankruptcy Court was collaterally estopped from ruling on the issue of Roden's bad faith failure to disclose his patent case; (2) whether the Bankruptcy Court was clearly erroneous in finding that Roden filed under Chapter 13 in bad faith for failure to disclose his patent and potential litigious rights; (3) whether the Bankruptcy Court erred in sustaining Appellees' hearsay objection; and (4) whether the Bankruptcy Court abused its discretion when it converted his case into a Chapter 7 bankruptcy instead of reinstating the case as a Chapter 13 bankruptcy.

    **A.**     **Collateral Estoppel**

Roden argues that the Bankruptcy Court confronted the "identical issues of fact" that the district court considered when it denied the Appellees' motion for summary judgment in the patent litigation. [Doc. No. 10, p. 10]. Therefore, Roden contends the Bankruptcy Court was collaterally estopped from making a finding of fraud and bad faith.

The doctrine of collateral estoppel precludes re-litigation of both issues of law and issues of fact if those issues were conclusively and necessarily determined in a prior action involving the same parties. *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 165 (1984). Collateral estoppel does not apply where there are "unmixed questions of law," in which a party proceeds on a different legal theory in a subsequent action, even if predicated on the same underlying facts. *Montana v. United States,* 440 U.S. 147, 162 (1979)(internal citations omitted).

Here, although the underlying facts are the same, the legal issues presented in the patent litigation differ from the issues Appellees subsequently presented to the Bankruptcy Court. In the patent litigation, the district court was tasked generally to determine whether or not judicial estoppel applied to bar Roden's patent claims. Judicial estoppel is invoked where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). The doctrine applies where (1) the party against whom judicial estoppel is sought asserted a legal position which is plainly inconsistent with a prior position; (2) the court accepted the prior position (commonly referred to as the "judicial reliance" prong); and (3) there was a determination that the party did not act inadvertently. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)(*en banc*).

In the patent litigation, the district court ruled that there were genuine issues as to whether judicial estoppel applied, reasoning that it was unclear whether the judicial reliance prong had been satisfied because questions remained as to whether the Bankruptcy Court previously relied on Roden's non-disclosure given that his Chapter 13 case was dismissed without discharge. *See Roden v. Synergy Technologies, Inc.*, CIV.A. No. 13-6753, 2014 WL 2533718, at *2 (E.D. La. June 4, 2014).

In contrast, the primary issue before the Bankruptcy Court in the bankruptcy proceeding was whether to re-open the bankruptcy case on grounds that Roden had acted in bad faith and committed fraud for failure to disclose his patent claim. In considering the Appellees' Motion for 60(b) relief, the Bankruptcy Court conducted a full evidentiary hearing and made a factual finding that Roden had acted in bad faith for his failure to truthfully disclose his assets to the Bankruptcy Court. The district court's ruling cannot be characterized as a factual finding regarding the issue of Roden's bad faith; the district court's ruling was predicated on its uncertainty as to whether the Bankruptcy Court had

previously relied on Roden's non-disclosure, and it is now apparent that the Bankruptcy Court did. Therefore, because the Bankruptcy Court and the district court faced different legal issues, the Bankruptcy Court was not collaterally estopped from making a finding of fraud and bad faith.

### B. Finding of Bad Faith

Alternatively, Roden argues the Bankruptcy Court was clearly erroneous in its finding of bad faith and fraud against him because he claims the record clearly indicates he sincerely believed that he did not have a patent claim when he filed for bankruptcy. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)(internal citations omitted).

A debtor's bad faith constitutes cause for conversion under Section 1307(c) of the Bankruptcy Code. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007); *In re Jacobson,* 609 F.3d 647, 660 (5th Cir. 2010)("we hold that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process."). In a footnote, the *Marrama* Court indicated that the "bad faith" conduct that serves as a basis for conversion must be "atypical" and "extraordinary." *Marrama*, 549 U.S. 365, at n. 11.

In support of his claim that he acted in good faith, *i.e.*, that he was unaware that he had a legitimate patent claim at the time he filed for bankruptcy, Roden highlights the following:

- his testimony that he sincerely believed that he did not have a viable patent claim against Appellees. [Doc. No. 3, Exh. 20, at pp. 29, 35, 44, 47, 49, 54, 59, 61, 62, and 79].

- his testimony that, prior to filing bankruptcy, three attorneys told him his patent claims had likely prescribed. [Doc. No. 3, Exh. 20, at pp. 25, 59, and 60].

- to rebut the contention that, before his Chapter 13 Bankruptcy was closed, he contacted attorney Tom Keaty about his patent claim, his testimony that he contacted Keaty regarding "another issue that [he] was concerned about" and that the matter they discussed "was not in regard to the [patent litigation]." [Doc. No. 3, Exh. 20, at pp. 36, 42].

- the testimony of Mark Andrews, Roden's attorney in the patent litigation, in which Andrews states he discovered legal theories after Roden's Chapter 13 dismissal--theories unaddressed by previous attorneys--to pursue Roden's patent law claim. [Doc. No. 3, Exh. 20, p. 111].

In response, Appellees contend Roden knew he possessed a potential patent claim when he filed for bankruptcy and that his intentional non-disclosure was indeed atypical. In support, Appellees emphasize the following:

- Paragraph 65 of Roden's complaint in the patent litigation, in which Roden alleged:

    > SteriFx, Inc. and Synergy Technologies, Inc. have during the whole period from 2005 to the present day, falsely led shareholder Ernest G. Roden to believe that a settlement and rectification of the known problems, to the satisfaction of Inventor Roden, were forthcoming, and ***Roden has withheld the filing of suit in vain anticipation of any such settlement and rectification***. [Doc. No. 15, p. 9](emphasis added).

- that Roden began contacting patent attorneys soon after his Chapter 13 case was dismissed with what one of these attorneys described as "an overwhelming story of being done wrong" and a "big old stack of papers" that Roden believed supported his patent law claim. [Doc. No. 3, Exh. 20, pp. 106, 108].

- The testimony of Mr. Blount, the process server in patent litigation, that

7

>Roden told him he had "finally found an attorney to take my case." [Doc. No. 3, Exh. 20, pp. 91-92].

In the hearing in which the Bankruptcy Court found Roden in bad faith, Judge Henley Hunter heard Roden's testimony and observed that Roden was for years "literally obsessed" with the notion that he had been, in Roden's terms, "screwed" out of his patent rights and that he had an "absolutely uncanny recall of dates and time and places" surrounding the patent claim. [Doc. No. 3, Exh. 20, p. 151]. Judge Hunter also observed that, even after Roden's case was dismissed, he could have returned to the bankruptcy court and disclosed the claims. *Id.* at 155.

Further, Judge Hunter stated that after the dismissal of his bankruptcy case, Roden "knew he had [a potential patent claim]" and shopped that claim around until he found an attorney willing to take his case. *Id.* The transcript of this hearing provides ample evidence that Roden was aware of his patent claim at the time he filed for bankruptcy. Consequently, the Bankruptcy Court's bad faith finding was not clearly erroneous.

Moreover, it is irrelevant to the bad faith inquiry whether Roden knew of the legal viability of his patent claim, only whether he knew of the operative facts that gave rise to the claim. The Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. 11 U.S.C. § 521(1). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D.Tex. 1996). In order to invoke the duty to disclose, "the debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has ***enough information*** . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of

8

action such that it must be disclosed." *Coastal Plains*, 179 F.3d at 208 (internal citations and quotations omitted)(emphasis added).

The integrity of the bankruptcy process would be undermined if debtors were allowed to pursue legal rights after dismissal for legal claims that arose before dismissal. As the *Coastal Plains* court reasoned, were such a scenario allowed, debtors would be encouraged to:

> conceal claims, write off debts, purchase debtor assets at bargain prices, and then sue on undisclosed claims and possibly recover windfalls. This, of course, would be to the detriment of creditors who decided not to bid on the debtor's assets at a foreclosure sale because they lacked knowledge about the existence or value of the undisclosed claims.

*Coastal Plains*, 179 F.3d at 213.

District and bankruptcy courts in this Circuit confronting cases with similar underlying facts to this case have followed the *Coastal Plains* logic and held that the duty to disclose is invoked even where the litigants were unaware of the legal theories under which to pursue their claim. In *Lejeune v. Turner Industries Group, L.L.C.,* CIV. A. 11–1238, 2012 WL 1118631 (E.D. La. April 3, 2012), *aff'd sub nom., Parker Industries Group, L.L.C.,* 2012 WL 1118631 (5th Cir. 2012), the plaintiff filed for Chapter 13 relief but failed to disclose his employment discrimination claim prior to the confirmation of his Chapter 13 plan. The plaintiff claimed to have been "completely unaware of the potential for a lawsuit" until he met with "an experienced employment discrimination attorney" after the confirmation of his Chapter 13 plan. *Lejeune*, 2012 WL 1118631 at *4. Nevertheless, the district court dismissed the plaintiff's Title VII claims on judicial estoppel grounds, reasoning that the plaintiff was duty bound to "disclose a claim any time that he was aware of the *facts* giving rise to a potential cause of action, irrespective of his knowledge of the law." *Id.* (emphasis in original).

Similarly, in *In re Adams,* 481 B.R. 854, 858 (Bankr. N.D. Miss. 2012), a Mississippi bankruptcy court held that a Chapter 13 debtor had a continuing duty throughout the pendency of her bankruptcy to disclose to the bankruptcy court her wrongful death action, even though she was unaware of the legal theories to pursue the claim at the time her Chapter 13 plan was confirmed. The *Adams* debtor did not disclose a wrongful death action in her bankruptcy schedules and initiated suit after she had petitioned for Chapter 13 relief. *Id.* at 854. The bankruptcy court held that the post-confirmation wrongful death action was property of her bankruptcy estate, reasoning that debtors have a continuing duty to disclose. *Id.* at 859; *see also Love v. Tyson Foods, Inc.*, 677 F.3d 258, 260 (5th Cir. 2012)(holding that Chapter 13 debtor was estopped from bringing a Title VII claim against his employer when he failed to previously disclose that cause of action in his bankruptcy proceeding).

Roden certainly had "enough information" to be "aware of a possible cause of action." *Lejeune,* 2012 WL 1118631 at *4. The record is replete with evidence that Roden was intimately involved with Appellees and the patent beginning in the early 1990's and that he believed he had been "screwed" out of his patent rights. Therefore, even accepting Roden's contention that he believed his claim had prescribed, the Bankruptcy Court's bad faith ruling was not clearly erroneous.

### C. Bankruptcy Court's Hearsay Ruling

Roden appeals the Bankruptcy Court's hearsay ruling to exclude three attorney letters indicating that Roden had been told by those attorneys that his patent claim had prescribed. Roden appeals on grounds that the letters did not constitute inadmissible hearsay because they were offered only to show the letters' impact on Roden, not for the truth of what is stated in the letters (that Roden did not believe he had a viable patent claim while his Chapter 13 was pending).

Hearsay constitutes an out of court statement that "a party offers in evidence to prove the truth

10

of the matter asserted in the statement." FED. R. EVID. 801(c)(2). If the significance of an offered statement lies solely in the fact that it was made, no issue being raised as to the truth of anything asserted, then the statement is not hearsay. *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir. 1950), *rev'd on other grounds,* 340 U.S. 558. Roden's attorney argued that the letters did not constitute hearsay because they were being offered merely to show that Roden "was under the impression that he did not own any intellectual property rights" and that Roden did not believe the "assertions [in the letters] were correct, but . . . [that] his present sense impression" was that he did not have a viable patent claim. [Doc. No. 3, Exh. 20, p. 26].

Even if the Court were to conclude the letters were not offered to show the truth of the matter asserted, which is arguable*,* the Bankruptcy Court's hearsay ruling constitutes harmless error. For reasons stated above, it is irrelevant whether Roden believed his claim had prescribed; whether he had a duty to disclose a potential patent claim to the bankruptcy court depended only on whether he was aware of the operative facts that gave rise to the claim, which Roden certainly was. Moreover, there is other evidence on the record that Roden believed that his patent claim had prescribed, and the Bankruptcy Court considered that evidence. Consequently, the Bankruptcy Court did not commit an abuse of discretion in its hearsay ruling.

### D. Conversion to Chapter 7

Roden argues that the Bankruptcy Court erred in converting his case to a Chapter 7 rather than reinstating the case as a Chapter 13 bankruptcy. The bankruptcy code permits the bankruptcy trustee to convert a Chapter 13 to a Chapter 7 bankruptcy "for cause." Section 1307 of the Code provides in relevant part:

> **(c)** Except as provided in subsection (f) of this section, on request of

> a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate, for cause**, including–
>
> . . .
>
> **(6)** material default by the debtor with respect to a term of a confirmed plan;

11 U.S.C.A. § 1307(c)(emphasis added).

Eugene Hastings, the Chapter 13 trustee, testified that his standard practice when a Chapter 13 debtor does not make plan payments and has no assets is to move for dismissal of the debtor's Chapter 13 case. [Doc. No. 3, Exh. 20, p. 96]. However, if the Chapter 13 debtor who stops making plan payments has a pending claim, lawsuit, or litigious right, Hastings' standard practice is to move for conversion of the Chapter 13 case to a Chapter 7 under 11 U.S.C.A. § 1307(c) because such practice is "in the best interest of" the debtors' creditors. *Id.* Mr. Hastings testified that he encounters this situation approximately six times per year, and that, if he had known that Roden claimed to own the patent rights or claims set forth in the patent litigation, he would have petitioned the bankruptcy court to convert the case to a Chapter 7. *Id.* at pp. 96-97. The Appellees and Hastings, therefore, argue that Roden *is now in the exact position he would have been had he satisfied his obligation to disclose his patent claim.*

Roden directs the Court to *In re May,* (Bankr. W.D. La.)(No. 09-31235), a case with somewhat similar underlying facts to this matter, but where the bankruptcy court, rather than converting the case to a Chapter 7, allowed the debtors to proceed in Chapter 13 after they uncovered a cause of action post-bankruptcy petition.

However, *May* is distinguishable. First, the *May* debtors filed a motion to disclose their cause of action with the bankruptcy court after they discovered their claim, while Roden did not. Second,

the *May* debtors were not in default on plan payments, while Roden was. Moreover, Roden's argument that he failed to disclose because he discovered the viability of the claim only after his Chapter 13 was dismissed is unpersuasive--he could have notified the bankruptcy court of this claim and petitioned to have his Chapter 13 re-opened. Instead, he filed suit on his own behalf, foreclosing any possibility of his creditors sharing the potential proceeds.

Thus, the Bankruptcy Court did not abuse its discretion in its decision to convert Roden's Chapter 13 bankruptcy to a Chapter 7 liquidation rather than reinstating it as a Chapter 13.

### III. CONCLUSION

The Court finds that the Bankruptcy Court was not collaterally estopped from making a finding of fraud and bad faith against Roden. Further, under the facts and circumstances of this case, the Court finds that the Bankruptcy Court was not clearly erroneous in determining that Roden acted in fraud and bad faith. Finally, the Bankruptcy Court did not abuse its discretion in either its hearsay ruling or its decision to convert Roden's Chapter 13 bankruptcy to a Chapter 7 liquidation. Accordingly, the Bankruptcy Court's order is AFFIRMED in its entirety, and Appellants' Appeal is DISMISSED.

MONROE, LOUISIANA, this 5th day of January, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE